# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NORTHEASTERN DIVISION

| | |
|---|---|
| ANTHONY EMBERTON[1], ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | Civil Action No. 2:09-0018 |
| v. ) | Judge Nixon / Knowles |
| ) | |
| MICHAEL ASTRUE, ) | |
| **Commissioner of Social Security** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 15. Defendant has filed a Motion for Judgment on the Pleadings, which the Court will construe as a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 21.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner

---

[1] While some documents in the record spell Plaintiff's last name "Emerton" (*See, e.g.*, Docket No. 14), the correct spelling of Plaintiff's last name is listed above, as it is the spelling used by Plaintiff's attorney and in Plaintiff's medical records (*See* Docket Nos. 15, 16, *see, e.g.*, TR 134).

1

be AFFIRMED.

## I. INTRODUCTION

Plaintiff filed his applications for DIB and SSI on July 12, 2005,[2] alleging that he had been disabled since June 19, 2004,[3] due to back pain, neck pain, shoulder pain, leg pain, and a herniated disc. Docket No. 16, Attachment ("TR"), 24, 60, 114, 121. Plaintiff's applications were denied both initially (TR 21-22, 23) and upon reconsideration (TR 18-19, 20). Plaintiff subsequently requested (TR 50) and received (TR 27, 32-36, 327) a hearing. Plaintiff's hearing was conducted on April 16, 2008, via video teleconference, by Administrative Law Judge ("ALJ") Jack B. Williams. TR 27, 32-36, 327-49. Plaintiff and vocational expert ("VE"), Anne B. Thomas, appeared and testified. TR 30, 346-48.

On July 21, 2008, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 7-17. Specifically, the ALJ made the following findings of fact:

    1.    The claimant met the insured status requirements of the

---

[2] The record contains documents with multiple dates as to the submission of Plaintiff's application for SSI and DIB benefits. The Appointment of Representative Form was signed by both Plaintiff and Plaintiff's attorney, Michael Walker, on July 12, 2005, but was not time stamped at the Cookeville SSA Administrative Office until July 15, 2005 (TR 48). The transmittal pages for Type II Disability and Type XVI Disability list a filing date of July 26, 2005 (TR 25-26). In the ALJ's report (TR 10), Plaintiff's brief (Docket No. 16), and Defendant's brief (Docket No. 22), the filing date is listed as July 12, 2005. These discrepancies are not, however, material to the issues before the Court.

[3] Plaintiff's brief states that the starting disability date was June 19, 2004 (Docket. No. 16), while Defendant's brief states that the starting disability date was June 19, 2005 (Docket No. 22). The injury that began Plaintiff's alleged disability was on June 19, 2004, when Plaintiff was in a motorcycle accident (TR 332), and multiple other documents in the record list June 19, 2004, as the correct starting disability date (TR 25, 26, 30). These discrepancies are not, however, material to the issues before the Court.

2

Social Security Act through December 31, 2005.

2. The claimant has not engaged in substantial gainful activity since June 19, 2004, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*)

3. The claimant has the following severe impairments: status post cervical fusion for facet joint fracture at C5-6, lumbar disk protrusions at L4-5 and L5-S1, status post left shoulder injury, and non-union of a right ankle fracture (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 404.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has residual functional capacity to perform a range of light exertion where he does not have to stand over 2 hours per day, walk over 2 hours per day, or sit over 6 hours per day, including the full range of sedentary work.

   While these limitations will not accommodate a full range of light exertion, they are consistent with the capacity for a full range of sedentary work.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on April 2, 1968 and was 40 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because applying the Medical-

3

Case 2:09-cv-00018 Document 23 Filed 09/30/10 Page 3 of 19 PageID #: 64

>           Vocational Rules directly supports a finding of "not
>           disabled," whether or not the claimant has transferable job
>           skills (See SSR 82-41 and 20 CFR Part 404, Subpart P,
>           Appendix 2).
>
>    10.    Considering the claimant's age, education, work
>           experience, and residual functional capacity, there are jobs
>           that exist in significant numbers in the national economy
>           that the claimant can perform (20 CFR 404.1560(c),
>           404.1566, 416.960(c), and 416.966).
>
>    11.    The claimant has not been under a disability, as defined in
>           the Social Security Act, from June 19, 2004 through the
>           date of this decision (20 CFR 404.1520(f) and 416.920(g)).

TR 12-16.

On September 17, 2008, Plaintiff timely filed a request for review of the hearing decision. TR 312. On December 8, 2008, the Appeals Council issued a letter declining to review the case (TR 2-5), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. §§ 405(g) and 1383(c)(3). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standards of Review

4

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of

5

medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

>    (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
>    (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
>    (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[4] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.
>
>    (4) If the claimant does not suffer from any listing-level

---

[4]The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

> impairments, it must be determined whether the claimant can
> return to the job he or she previously held in light of his or her
> residual functional capacity (e.g., what the claimant can still do
> despite his or her limitations). By showing a medical condition
> that prevents him or her from returning to such past relevant work,
> the claimant establishes a *prima facie* case of disability.
>
> (5) Once the claimant establishes a *prima facie* case of disability,
> the burden shifts to the Commissioner to establish the claimant's
> ability to work by proving the existence of a significant number of
> jobs in the national economy which the claimant could perform,
> given his or her age, experience, education, and residual functional
> capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added). *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and

7

nonsevere.  *See* 42 U.S.C. § 423(d)(2)(B).

## C.  Plaintiff's Statement Of Errors

Plaintiff contends that: (1) the ALJ erroneously accorded less weight to the opinions of his treating neurosurgeon (Dr. Joseph Jetsus), treating physician (Dr. Kenneth Beaty), and consultative examiner (Dr. Michael Cox), than to a one-time consultative examiner (Dr. Jerry Surber); and (2) the ALJ erroneously discounted Plaintiff's subjective complaints of pain, when those subjective complaints of pain are supported by evidence in the record.  Docket No. 16. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded.  *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking."  *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).  Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits.  *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994).  *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

**1. The ALJ erroneously accorded less weight to the opinions of Plaintiff's treating neurosurgeon (Dr. Joseph Jetsus), treating physician (Dr. Kenneth Beaty), and consultative**

8

**examiner (Dr. Michael Cox), than to a one-time consultative examiner (Dr. Jerry Surber).**

Plaintiff argues that the ALJ violated 20 CFR 404.1527 when the ALJ accorded greater weight to consultative examiner Dr. Surber's one-time evaluation, than to the evaluations of the consulting physician Dr. Cox, the treating neurosurgeon Dr. Jestus, and the treating physician Dr. Beaty. Docket No. 16. Plaintiff alleges that Drs. Cox, Jestus, and Beaty all noted in their medical records that Plaintiff had severe pain, with Drs. Cox and Beaty specifically noting that Plaintiff could not perform regular and continuing work activity on an eight hour per day basis. *Id.*

Defendant argues that the ALJ properly evaluated the opinions of Drs. Cox, Beaty, and Jestus. Docket No. 22. Defendant argues that Dr. Beaty's opinion contradicted other evidence in the record and also contradicted previous reports from Dr. Beaty himself. *Id.* Defendant additionally argues that the few medical records in the record from Dr. Jestus indicate that Plaintiff's condition was improving, and that the ALJ properly considered Dr. Jestus's records when he determined that Plaintiff was capable of performing sedentary work. *Id.* Defendant argues next that the ALJ was correct in according less weight to Dr. Cox's medical evaluation of Plaintiff, since Dr. Cox's findings regarding Plaintiff's physical limitations were inconsistent with other evidence in the record. *Id.*

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has

9

not examined you.
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. ...
> (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...
> (4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.
> (5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.
> ...

20 C.F.R. § 416.927(d) (emphasis added). *See also* 20 C.F.R. § 404.1527(d).

If the ALJ rejects the opinion of a treating source, he is required to articulate some basis for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 C.F.R. § 404.1502.

Dr. Beaty treated Plaintiff for an extensive period of time, a fact that would justify the ALJ's giving greater weight to his opinion than to other opinions. 20 C.F.R. § 404.1527(d)(2).

10

As has been noted by the ALJ, however, Dr. Beaty's opinion contradicts other substantial evidence in the record, including findings in Dr. Beaty's own records. TR 14-15. Dr. Beaty, in his April 10, 2008 Medical Assessment to do Work-Related Activities ("Assessment"), found that Plaintiff could lift "0 pounds;" could stand and/or walk less than two total hours in an eight hour workday; could stand and/or walk less than fifteen minutes at a time without interruption; could sit less than two hours total during a regular eight hour workday; could sit for less than thirty minutes at a time without interruption; would not be able to climb, kneel, crouch, stoop, balance, or crawl; would not be able to reach, push, pull or handle; and was "totally and completely disabled" such that he would not be able to work. TR 155-57.

As noted by the ALJ, Dr. Beaty's April 10, 2008 Assessment is inconsistent with his own earlier medical examination records. TR 14. Specifically, the ALJ noted:

> [Plaintiff's] family physician, Dr. Beaty, reported on October 19, 2007 that claimant has "moderate" pain which is "relieved" by analgesics (p. 166). Dr. Beaty also reports "moderately" restricted movements of the head and neck (p. 165). He reports claimant "occasionally" has trouble sleeping due to pain (p. 159). Dr. Beaty reports normal stability of the neck with normal strength and tone (p. 163). Further, Dr. Beaty does not report any muscle weakness, reflex deficits, numbness, loss of bowel or bladder control, atrophy, or other signs of a totally disabling spinal impairment even though the claimant persistently complains of worsening neck pain. Dr. Beaty had reported in January 2007 (p. 132) that claimant had no difficulty in motor strength, gain, sensation, memory, concentration, mood, and that claimant had denied dizziness or imbalance.

*Id.*

The ALJ also found that Dr. Beaty's April 10, 2008 Assessment was inconsistent with other physicians' records. TR 14-15. Specifically, the ALJ noted:

> Although the treating neurological surgeon, Dr. Jestus, reported in

11

> June 2005 that on that date claimant had a severely antalgic gait
> dur to pain and was pretty miserable due to pain, Dr. Jestus later
> reported on September 2, 2005 (p. 97) that the lumbar
> radiculopathy has since resolved. Dr. Jestus reported the neck
> fusion at C5-6 looked "excellent" but noted arthritic changes at
> C1-2. Although the fracture at C1-2 had healed, he felt the
> arthritic changes at that level could be the source of some
> continuing neck pain. No more recent medical reports from Dr.
> Jestus have been offered.
>
> Dr. Cox consultatively examined claimant on October 7, 2005 (pp.
> 101-105). He noted claimant used no orthopedic appliances; that
> he could move around the office with "no obvious disability"
> despite subjective complaints of pain; and that straight leg raising
> was positive when lying down and negative when sitting. Straight
> leg raise testing was inconsistent as true radicular pain should
> result whether sitting or lying. He concluded that claimant could
> perform a range of light exertion lifting 20 pounds occasionally
> and 10 pounds frequently but limited claimant to working less than
> a full 8-hour workday.
>
> Post hearing examination by another consultant, Dr. Surber, on
> May 21, 2008 (pp. 169-179) reflects that the claimant was "very
> poorly cooperative" during the examination. Dr. Surber noted that
> the claimant's reflexes were intact, that there was no evidence of
> muscle wasting, that the claimant reported he, at times, continues
> to ride motorcycles, but that claimant moved very slowly in the
> office using a cane in his right hand. Dr. Surber noted, however,
> that claimant walked in a more normal fashion both to and from
> the office and that when examined previously on October 7, 2005,
> the claimant had no cane. Dr. Surber says he is unable to
> determine whether a cane is medically necessary but reports
> claimant is capable of a range of light work lifting 10-30 pounds
> occasionally and 10 pounds frequently. He says claimant can
> stand 2-4 hours per day, can walk 2-4 hours per day, and sit 4-6
> hours per day.

TR 14-15.

After reviewing this evidence, the ALJ rejected Dr. Beaty's Assessment that indicated that Plaintiff was "totally and completely disabled," as this Assessment was inconsistent with his own treatment notes, as well as records from Drs. Jestus, Cox, and Surber. TR 15. The ALJ also

12

articulated that Plaintiff must have "some degree of leg and arm strength" since Plaintiff told Dr. Surber he could still ride a motorcycle (TR 136). *Id.*

As the Regulations state, the ALJ is not required to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 416.927(d)(2) and 20 C.F.R. § 404.1527(d)(2). Instead, when there is contradictory evidence, the treating physician's opinion is weighed against the contradictory evidence under the criteria listed above. *Id.* When the opinions of treating physicians are inconsistent with each other, the final decision regarding the weight to be given to the differing opinions lies with the Commissioner. 20 C.F.R. § 416.927(e)(2). Because Dr. Beaty's Assessment was inconsistent with his own treatment notes, as well as records from Drs. Jestus, Cox, and Surber, the Regulations do not mandate that the ALJ accord Dr. Beaty's Assessment controlling weight. Accordingly, Plaintiff's argument fails.

Moreover, the ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled because the definition of disability requires consideration of both medical and vocational factors. *See, e.g., King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988). As has been noted, in his Assessment, Dr. Beaty concluded that Plaintiff was "totally and completely disabled from his injuries" and could not "put in a full work load" because of his pain and chronic use of medication. TR 157. The ALJ properly articulated that statements indicating that a claimant is "disabled" or "unable to work" are not medical opinions, but administrative findings dispositive of a case, which are reserved for the Commissioner. TR 14. Accordingly, the ALJ properly noted that opinions on issues reserved to the Commissioner can never be given controlling weight, but must be determined

13

through consideration of the record as a whole. *Id*. Dr. Beaty's conclusory statements that Plaintiff was "disabled" and could not work were, therefore, not determinative of Plaintiff's claims, particularly because the ALJ found that, based on the entirety of the evidence of record, Plaintiff was not disabled within the definition of the Act. TR 15-17.

Plaintiff also asserts that the ALJ should have accorded greater weight to the opinion of Dr. Jestus. Docket No. 16. Plaintiff, however, fails to explain how the ALJ's evaluation of Dr. Jestus' medical records was erroneous. As has been demonstrated, the ALJ discussed the medical records from Dr. Jestus and noted that those records indicated that Plaintiff's condition was improving. TR 14. The ALJ's discussion of Dr. Jestus' records was proper. Plaintiff's argument fails.

Plaintiff further asserts that the ALJ should have accorded greater weight to the opinion of consultative examiner, Dr. Cox. Docket No. 16. Again, Plaintiff fails to explain how the ALJ's evaluation of Dr. Cox's medical records was erroneous. As quoted above, the ALJ explicitly discussed Dr. Cox's opinion and, like Dr. Cox, concluded that Plaintiff could perform a range of light exertion. TR 14-15. Plaintiff's argument again fails.

## 2. The ALJ was Incorrect in Discounting Plaintiff's Subjective Complaints of Pain

Plaintiff next contends that his subjective complaints of pain were credible and supported by objective evidence. Docket No. 16.

Defendant avers that the ALJ was correct in finding that Plaintiff's complaints of pain were not credible, as Plaintiff's testimony is not supported by objective medical evidence. Docket No. 22.

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's allegations of pain:

> [S]ubjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability...[T]here must be evidence of an underlying medical condition *and* (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition *or* (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986) (*quoting* S. Rep. No. 466, 98th Cong., 2d Sess. 24) (Emphasis added); *see also* 20 C.F.R. §§ 404.1529, 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled...."); and *Moon v. Sullivan*, 923 F.2d 1175, 1182-83 ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations...if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other."). Moreover, "allegations of pain...do not constitute a disability unless the pain is of such a debilitating degree that it prevents an individual from engaging in substantial gainful activity." *Bradley v. Secretary*, 862 F.2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994) (*construing* 20 C.F.R. § 404.1529(c)(2)). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an

ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981).

In the case at bar, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms; but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible to the extent they are inconsistent with the ALJ's residual functional capacity findings. TR 15. While Plaintiff testified during his administrative hearing that he fell on average once a week, had a decreased range of head/neck motion, used a cane, and slept on the floor in his garage because sleeping on a bed was uncomfortable (TR 335-38), the ALJ found that Plaintiff's medical records indicated that Plaintiff's complaints of pain were exaggerated and not credible. TR 13-17. Specifically, the ALJ articulated that, based on all of Plaintiff's reported activities and medical evaluations, Plaintiff's statements concerning the intensity, persistence, and limiting effects of Plaintiff's symptoms were not credible in light of the evidence of record. TR 15. The ALJ noted that even Dr. Beaty described Plaintiff's pain and restrictions on head and neck movement as "moderate," that Dr. Beaty had noted that Plaintiff had no difficulty in motor strength, gait, sensation, memory, concentration, or mood, and that Dr. Beaty had denied dizziness or imbalance since as early as January 17, 2007 (TR 177). TR 14.

The ALJ also noted that Dr. Jetsus found that Plaintiff's medical condition had improved, and reported on September 2, 2005, that Plaintiff's neck fusion at C5-6 looked "excellent" (TR 212). TR 14. Additionally, the ALJ noted that both Dr. Cox (TR 207) and Dr. Surber (TR 133)

found that Plaintiff would be capable of light exertion work. Dr. Cox noted that Plaintiff could move around with "no obvious disability." TR 206. Dr. Surber noted that Plaintiff had not previously needed the assistance of a cane during an earlier medical exam on October 7, 2005, and that no interim injuries had occurred which would necessitate the need to now use the cane (TR 135). TR 14-15. The ALJ noted that there was no atrophy of the extremities, as would be expected with Plaintiff's claims, that Plaintiff's lumbar radiculopathy had resolved, and that there were no permanent back or neck limitations of disabling severity. TR 15.

The ALJ further noted that while Plaintiff chooses to use a cane, Plaintiff's admissions that he still drives a motorcycle directly contradict any claims of balancing difficulties which cause Plaintiff to fall on average once a week. TR 15. Finally, the ALJ concluded that, based on all of the medical evidence and Plaintiff's "excessive pain behavior," Plaintiff's subjective complaints of pain were exaggerated and not credible. *Id.*

As can be seen, the ALJ's decision specifically addresses in great detail not only the medical evidence, but also Plaintiff's subjective claims, clearly indicating that these factors were considered. TR 13-17. It is clear from the ALJ's detailed articulated rationale that, although there is evidence which could support Plaintiff's claims, the ALJ chose to rely on medical findings that were inconsistent with Plaintiff's allegations. This is within the ALJ's province.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's

17

demeanor and credibility. *Walters,* 127 F.3d at 531 (*citing Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F.3d at 531 (*citing Bradley,* 682 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987)). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record (*see King*, 742 F.2d at 975).

After assessing all the objective medical evidence, the ALJ determined that Plaintiff's testimony regarding the degree of his symptoms was exaggerated and not credible. TR 15-17. As has been noted, this determination is within the ALJ's province.

The ALJ observed Plaintiff during his hearing, assessed the medical records, and reached a reasoned decision; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper. Therefore, this claim fails.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to

this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

　　　　　　　　　　　　　　　　　　 _____
　　　　　　　　　　　　　　　　　　 E. CLIFTON KNOWLES
　　　　　　　　　　　　　　　　　　 United States Magistrate Judge